Addie H. Green v. Commissioner. W. A. Green, Jr. v. Commissioner. Holmes Green v. Commissioner.
Addie H. Green v. Commissioner
Docket Nos. 9022, 9023, 9024.
United States Tax Court
1947 Tax Ct. Memo LEXIS 87; 6 T.C.M. (CCH) 1036; T.C.M. (RIA) 47255; September 26, 1947
*87 Held, that certain bank stock which petitioners sold in the taxable year had not become worthless in a prior year and they are entitled to deduct their losses sustained upon the sales. Allen Wight, Esq., 1108 Magnolia Bldg., Dallas, Texas, for the petitioners. John W. Alexander, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion These consolidated proceedings involve income tax deficiencies for the year 1943 in the following amounts: Addie H. Green
$315.39
W. A. Green, Jr.
408.94
Holmes Green
416.56
The issue common to all three cases is whether the petitioners are entitled to deduct losses on account of the sale of certain bank stock in 1943. Findings of Fact The petitioners are residents of Dallas, Texas. Their returns for the taxable year were filed *88 with the collector of internal revenue for the second district of Texas. W. A. Green, Sr., was the husband of petitioner, Addie H. Green, and the father of petitioners, W. A. Green, Jr., and Holmes Green. In 1921, he purchased 194 shares of stock in the Southwest National Bank at Dallas at a cost of $100 per share. He died in September 1923, and his estate tax was settled on the basis of a value of $100 per share for the Southwest Bank stock as of the date of death. After his death the 194 shares of stock were owned, one-half by Addie H. Green, and one-fourth each by W. A. Green, Jr., and Holmes Green. The Southwest Bank was engaged in the banking business at Dallas until May 13, 1925, at which time it transferred all its assets to the North Texas National Bank, and the latter assumed its liabilities except those to stockholders. Under the terms of the contract, North Texas agreed at the end of one year to return to a liquidating agent selected by Southwest all assets in excess of an amount equal to the liabilities assumed. Pursuant to the contract, North Texas later returned to the liquidating agent of Southwest assets which had been acquired by Southwest at a cost in excess *89 of $2,000,000. These assets consisted, in the main, of scattered real estate holdings and securities. Some time prior to 1928, Harry D. Farracy, trustee in bankruptcy for the Estate of L. H. Lewis Company, bankrupt, brought an action against Southwest and its predecessor, alleging that they were liable to the Lewis Company in the amount of $43,000. The trial court held for the defendants but was reversed by the appellate court in an opinion rendered June 25, 1930, . During 1929, with the assistance of independent appraisers and stock brokers, a revaluation of assets was made by the liquidating agent and the board of directors of Southwest for the purpose of arriving at the true value of the bank's remaining assets. The sound value of such assets on May 5, 1929, was about $353,000, against which were bills payable of $48,000, and contingent liabilities of approximately $128,000. In 1930, one Gordon T. West and three other individuals organized a corporation known as the West Investment Company for the purpose of purchasing Southwest Bank stock. This corporation acquired from various Southwest stockholders *90 a total of about 8,000 of the outstanding 20,000 shares, paying as high as $6 a share therefor. One Southwest stockholder transferred his stock to the West Company in consideration of an agreement to protect him from any possible assessment. On March 31, 1931, the sound value of the remaining assets of Southwest was about $167,000 and the liabilities, including the Farracy judgment, were only about $58,000. Since April 1931, Gordon T. West has been the liquidating agent of Southwest. His annual statements to Southwest stockholders have always showed an excess of assets, at probable liquidating value, over liabilities. Petitioners in their returns for 1941 claimed losses on account of the worthlessness of the Southwest stock, which the respondent disallowed. Prior to 1943, the Farracy judgment had been fully paid off, and in 1943 Southwest still had assets in excess of liabilities. No liquidating dividends had ever been paid on its stock. At the time of the hearing in the instant case, however, the bank was still in process of liquidation; and most of its remaining assets, except some scattered oil royalties, had been reduced to cash. In November 1943, petitioners sold their *91 Southwest stock to Gordon T. West for 25 cents a share. Mr. West was not related to them in any way. The sales were bona fide, arm's length transactions. In their returns for 1943 petitioners claimed long-term capital losses, subject to the limitations of section 117 of the Code, on account of the sales of their Southwest stock. Respondent disallowed these on the ground that the stock became worthless in a prior year and determined the deficiencies accordingly. Petitioners' Southwest stock had not become worthless prior to sales in the taxable year. Opinion ARUNDELL, Judge: That petitioners have sustained losses on their Southwest stock is not denied. There is a question, however, as to when the losses were sustained. Ordinarily, a sale closes the transaction and is an event fixing the amount of loss. But it has been held that where stock has already become worthless, a taxpayer may not postpone deducting his loss by holding the stock until a later year and then selling it for a nominal sum. ; . Since the sales price here was rather nominal and since respondent disallowed *92 the losses on the ground of worthlessness in a prior year, petitioners were under the burden of establishing that the stock had not become worthless prior to their sales. We think the petitioners have satisfactorily discharged that burden. Respondent relies largely on , in which it was held that that taxpayer's stock in the Southwest National Bank became worthless in the year 1925 when Southwest's assets were transferred to North Texas. The present petitioners, however, were not parties to that proceeding and are not to be bound by the decision therein. This case must be decided on its own record. . So far as the findings in the Tricou case disclose, it was not there made to appear that after a year North Texas returned to Southwest assets of a considerable value - that is, all assets in excess of an amount sufficient to cover the liabilities assumed. Respondent alternatively contends that the stock became worthless in 1931 after the Farracy judgment. Petitioners have demonstrated, however, that the stock was not worthless in either 1925 or 1931. They have proved that the sound *93 value of Southwest Bank's assets was in excess of liabilities, including the Farracy judgment. Even after the Farracy judgment, the liquidating agent's annual statements to the stockholders always showed an excess of assets over liabilities. The petitioners were not related to the vendee of their stock in any way. The vendee himself, prior to becoming liquidating agent of the bank, had, with three other persons, organized a corporation for the purpose of buying up Southwest's stock. This strongly suggests that these persons expected to realize a profit thereon. The sales here involved were bona fide and at arm's length. It appeared from the evidence that even as late as the hearing in this case, the bank was still in the process of liquidation and had assets in excess of liabilities. We think the petitioners have adequately proved, and we have found as a fact, that their stock did not become entirely worthless prior to the sales in the taxable year. It follows that they are entitled to deduct the losses claimed. Decisions will be entered for the petitioners.